### Caldwell v. Commonwealth.

(Decided October 4, 1927.)

## Appeal from Greenup Circuit Court.

1. False Pretenses.—Indictment in prosecution for obtaining money by false pretenses held to sufficiently charge that defendant knew representations made were untrue to extent that meaning could have been understood by person of ordinary understanding.

2. Indictment and Information.—An indictment must contain a statement of the acts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended.

3. False Pretenses.—In prosecution for obtaining money by false pretenses, instruction practically following charge in indictment except that false representations alleged to have been made were set out correctly as they should have been in indictment held not erroneous as being misleading, since jury were told expressly to acquit in case of reasonable doubt of guilt.

4.  False Pretenses.—Intention to commit a fraud is gist of the offense of "obtaining money by false pretenses," as forbidden by Ky. Stats., sec. 1208.

5.  False Pretenses.—In prosecution for obtaining money by false pretenses, evidence held sufficient to sustain conviction.

WAUGH & HOWERTON and L. H. LESLIE for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

Charles Caldwell was indicted for obtaining money by false pretenses. He was found guilty and his punishment fixed at one year in the penitentiary. He appeals. He demurred to the indictment and he insists on appeal that the demurrer should have been sustained on the ground that the indictment does not charge that he knew the representations he made were untrue. The charge of the indictment is in these words:

"The said defendant, Charles Caldwell, on the —— day of October, 1925, and before the finding of this indictment, in the county and circuit aforesaid, did unlawfully, willfully, feloniously, and falsely obtain personal property, namely, good and lawful money of the United States, in the sum of $1,000, the exact description of which is to the grand jury unknown, from J. F. Wright, and said money belonging to said J. F. Wright, from said J. F. Wright, with the felonious intention to commit a fraud, by said defendant unlawfully, willfully, feloniously and falsely pretending and representing to said J. F. Wright [in a contract with defendant to pay $1,000 to build a dwelling house and which said Wright had at the time employed said defendant to build and to pay for all labor and material therefor] that said defendant had paid for all the labor and material which defendant agreed to do in said contract when in truth and in fact said defendant had not paid and did not pay for all of the labor and material at the time of making said statements as aforesaid, but said J. F. Wright, relying upon defendant's said statements as true and believing in the truth of same, was thereby induced to and did pay and deliver to said defendant

said $1,000 and part with same to the defendant, and which said personal property the defendant then and there accepted and for which defendant made statements as aforesaid and which statements were false and untrue and were known at the time he made them to be false and untrue as aforesaid and contrary to the form of the statute in such case made and provided, and against the peace and dignity of the commonwealth of Kentucky.''

While the indictment is not clearly drawn, a person of ordinary understanding would understand what is meant. By the Code an indictment must contain a statement of the acts constituting the offense in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended. If the parenthetical clause in the indictment, which we have above placed in brackets, had been written in the opening of the charge following the words ''circuit aforesaid,'' there would be no difficulty in understanding the indictment. But that this is the sense any one will see on reading the indictment carefully. Very plainly the defendant's substantial rights were not affected by the overruling of the demurrer to the indictment. The indictment expressly charges in its conclusion that the statements named ''were false and untrue and were known at the time he made them to be false and untrue.'' Complaint is also made of the first instruction given the jury by the court, which practically followed the charge in the indictment, except that the court set out first the contract as it should have been set out in the indictment. The defendant could only be convicted upon the charge set out in the indictment. The jury could not have been misled in any way by the instruction, for they were told expressly to acquit the defendant if they had a reasonable doubt of his being proven guilty.

Under the statute (section 1208 Ky. Stats.), the offense is committed when with an intention to commit a fraud one person obtains from another money or property by any false pretense or statement. The intention to commit a fraud is the gist of the offense. Charles Caldwell was a contractor at Russell, Ky., putting up a number of houses; among others he undertook to put up a house for Dr. J. F. Wright and complete it in 15 days for $1,700, $1,000 of which was to be paid when the house

was under roof and the washhouse was up. The balance was to be paid on the completion of the work. At the same time he made a contract with Dr. Wright to put up four other houses for him. When the first house had the roof on it and the washhouse was up Caldwell came to Dr. Wright to collect the $1,000, and Wright asked him if he had receipted bills for the lumber and material he had paid for, and Caldwell brought out a bunch of bills and showed him that the labor and everything were paid for. Dr. Wright then gave him a check for $1,000, but after Caldwell left Dr. Wright found out that some of the bills Caldwell had handed him were not for material that went into his house. On investigation he learned that there was a bill of $57 due for lumber in his house and that there was $200 due for labor that had been performed on it. Caldwell insists that the bill of $57 for lumber did not go into this house but went into another house. As to the pay of the men, his custom was to pay them weekly, and he had paid them weekly all the wages, but the day he went to see Wright was two or three days after the last pay day and their wages for this time had not been paid. The men had continued to work on the house after the roof was put on in an effort to get it done in 15 days, and Wright knew they were still working on the house. Considerably more work had been done on the house after the roof was on and the washhouse put up before the $1,000 was paid, and other work was done after it was paid, but whatever was due the workmen was fully covered by the $700, which Wright was not to pay until the house was completed.

Under all the facts the court concludes that there was simply a mistake made here and that there was no intention to commit a fraud. All the material that went into the house, except one bill for $57, had in fact been paid for and a man putting up a number of houses might very reasonably be mistaken as to a small bill like this going in one house rather than another. At the time the $1,000 was paid both the parties well understood that the workmen were at work on the house, and the custom of paying for work by the week is so common that it may be presumed that both parties acted in view of it. On the whole case the court concludes that a new trial should be granted. There is no dispute that the house had reached the stage when the $1,000 was due. Dr. Wright paid the $1,000 because he owed it under the contract. Caldwell received the money because it was due under the contract.

Seven hundred dollars was left in Dr. Wright's hands to protect him until the completion of the contract.

Judgment reversed, and cause remanded for a new trial.